## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DANIELLE RICHARDSON,** | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) |
| v. | ) FILE NO. _____ |
| | ) |
| **HAPAG-LLOYD (AMERICA),** | ) |
| **LLC;** | ) |
| | ) JURY TRIAL DEMAND |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** Plaintiff, Danielle Richardson ("Plaintiff"), by and through the undersigned counsel and files this, her Complaint against Defendant Hapag-Lloyd (America), LLC ("Defendant"), and states as follows:

### I. INTRODUCTION

1.

This is an action brought by Plaintiff Danielle Richardson under the Family Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2601 et seq. and Title VII of the Civil Rights Act of 1964 and 1991, as amended ("Title VII") against the Defendant Hapag-Lloyd (America), LLC ("Defendant") for the unlawful termination of Plaintiff from her employment with Defendant in violation of the above-named acts.

2.

Defendant is directly and indirectly responsible for the illegal and unlawful conduct of its employees, including actions taken by Defendant's employees against Plaintiff in retaliation for her taking FMLA leave, a protected activity.

3.

Defendant is directly and indirectly responsible for the illegal and unlawful conduct of its employees, including the discrimination and harassment of Plaintiff based on race and sex, as well as retaliation against Plaintiff for exercising lawful rights and engaging in a protected activity, namely, the taking of FMLA leave for the birth of a child.

4.

Defendant's actions, or lack thereof, deprived Plaintiff of a safe work environment, and subjected Plaintiff to discrimination, harassment, and retaliation.

## II. JURISDICTION AND VENUE

5.

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and 1991 and the Family Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2601 et seq. and its implementing regulations at 29 C.F.R. §§ 825.101 et seq.

6.

On or about May 5, 2022, the Equal Opportunity Employment Commission issued a Right to Sue Letter to Plaintiff. Plaintiff has exhausted all of her administrative remedies.

7.

Plaintiff is a resident of Georgia, and at all times relevant to the allegations of this Complaint was a resident of Georgia and a citizen of the United States of America.

8.

Defendant is a foreign limited liability company with a principal office address of 399 Hoes Lane, Piscataway, New Jersey 08854, and incorporated in the state of Delaware.

9.

Defendant transacts business in the State of Georgia, including employing individuals and operating offices in the State of Georgia at 5515 Spalding Dive, Peachtree Corners, Georgia, 30092, in Gwinnett County.

10.

The Court has original subject matter jurisdiction over this matter predicated on federal question jurisdiction, as the instant case deals with violations of federal statutes. 28 U.S.C. § 1331.

11.

The Court has personal jurisdiction over the parties hereto pursuant to FRCP Rule 4(k)(1)(A) and O.C.G.A. § 9-10-91(A).

12.

A substantial part of the events or omissions giving rise to the claim in this case occurred within the Northern District of Georgia, Atlanta Division, venue is appropriate in this forum pursuant to 28 U.S.C. § 1391(b)(2).

### III. PARTIES

13.

At all times herein mentioned, Defendant was an employer within the meaning of the FMLA, 29 U.S.C § 2611(4)(A)(i)).

14.

From April 15, 2019, until May 14, 2021, Defendant employed Plaintiff as a Transport Dispatch Coordinator.

15.

From April 15, 2020, on, Plaintiff was an eligible employee of Defendant within the meaning of the FMLA. 29 U.S.C § 2611(2)(A)

16.

At all times relevant to this action, Defendant was responsible for managing, overseeing, employing, and supervising persons associated employed by Defendant.

## IV. FACTUAL ALLEGATIONS

17.

Plaintiff began employment with Defendant at Defendant's Peachtree Corners Office in Gwinnett County, Georgia, on or about April 15, 2019.

18.

As a result of the COVID-19 pandemic, Plaintiff worked remotely for Defendant from March 2020 through the termination of her employment with Defendant.

19.

Plaintiff continuously worked at Defendant's Quality Service Center as a Transport Dispatch Coordinator, eight (8) hours a day, five (5) days a week from April 15, 2019, until the termination of her employment on May 14, 2021.

20.

Plaintiff is a member of one or more protected classes based on her race, color and sex.

{Doc: 03078503.DOCX}5

21.

On or about August 7, 2020, over one year into her employment with Defendant, Plaintiff notified Defendant's Human Resources Coordinator that Plaintiff was pregnant and intended to exercise her right to take leave under the FMLA for the birth of her child and to care for her child following its birth. 29 U.S.C. § 2612(a)(1)(A).

22.

On or about August 7, 2022, Plaintiff applied for leave under the FMLA for the birth of her child and to care for her newborn child, with such leave set to begin on November 4, 2020, with an anticipated return from such leave on February 1, 2021.

23.

On or about November 4, 2020, Plaintiff notified her manager at Defendant's Office, Michael Scallan ("Mr. Scallan"), that she was starting her FMLA leave on that date.

24.

While on FMLA leave, Plaintiff faced persistent harassment and interference from Mr. Scallan regarding her return date from her FMLA leave based on her exercise of that protected leave, as well as her race, color and sex.

25.

{Doc: 03078503.DOCX}6

Defendant's Human Resources Department notified or should have notified Mr. Scallan, as Plaintiff's superior, of Plaintiff's FMLA leave, and that such leave would begin on November 4, 2020, and end on February 1, 2020.

26.

Mr. Scallan repeatedly contacted Plaintiff via text message and e-mail while she was on maternity leave to ask Plaintiff when she would be returning to work, which violated and interfered with Plaintiff's right to FMLA leave.

27.

On or about November 17, 2020, Mr. Scallan, as an employee of Defendant and Plaintiff's supervisor, violated and interfered with Ms. Richardson's right to FMLA leave by sending a text message to Plaintiff at approximately 8:20 a.m., asking, "[h]ow are you feeling today? Is VPN good"? ("Text Message 1")

28.

Text Message 1 was sent by Mr. Scallan, an employee of Defendant, with the intent and for the purpose of, coercing or harassing Plaintiff to perform work for Defendant while she was out on FMLA leave, a protected activity.

29.

On or about November 19, 2020, Mr. Scallan violated and interfered with Plaintiff's right to FMLA leave by copying Plaintiff on an e-mail with Defendant's

Human Resources Coordinator at approximately 8:23 a.m., which read in relevant part "[s]o [Plaintiff's] return to work is Dec 17th?" ("Email 1").

30.

Email 1 was sent by Mr. Scallan, an employee of Defendant, with the intent and for the purpose of, coercing or harassing Plaintiff to return to work for Defendant from her FMLA leave early.

31.

On or about November 29, 2020, Mr. Scallan copied Plaintiff on another e-mail with Defendant's Human Resources Coordinator, which read in relevant part "[o]k, so [Plaintiff] will return to work on 1/27, this is confirmed?" ("Email 2").

32.

Mr. Scallan knew or should have known that Plaintiff's FMLA leave would end on or about January 27, 2021. Ultimately, Plaintiff returned to work on February 1, 2021, a delay caused by technology issues with Defendant's system.

33.

Email 2 was sent by Mr. Scallan, an employee of Defendant, with the intent and for the purpose of, coercing or harassing Plaintiff to return to work for Defendant from her FMLA leave early.

34.

On or about December 2, 2020, Mr. Scallan copied Plaintiff on another e-mail at approximately 4:12 p.m. with Defendant's Human Resources Coordinator referring back to Email 2 and seeking confirmation Plaintiff would return to work on January 27, 2021, before her FMLA leave was set to end ("Email 3").

35.

On or about December 2, 2020, Defendant's Human Resources Coordinator sent Plaintiff text messages ("Text Messages 2") which asked Plaintiff to "let [Defendant] know if [Plaintiff] will be staying out the full 12 weeks [of her FMLA leave]. Or if [Plaintiff has] planned a date to return to work?".

36.

Defendant's Human Resources Coordinator was already aware of Plaintiff's plans regarding her FMLA leave at the time of Text Messages 2.

37.

Email 3 and Text Messages 2 were made by employees of Defendant with the intent and purpose of coercing or harassing Plaintiff to return to work for Defendant from her FMLA leave early.

38.

On or about December 2, 2020, Plaintiff replied to Text Messages 2, stating that Plaintiff was "not sure [when she would return to work, and that she had] a 6-

week check up on 12/15[ and that Plaintiff was] still in pain". Defendant's Human Resources Coordinator replied to Ms. Richardson that she was "just checking sinc[e] [sic] [Mr. Scallan] has asked [them to check when Plaintiff would be returning to work]". To which, Ms. Richardson replied, "[t]hanks Yes I noticed his emails…."

39.

Plaintiff informed Defendant's Human Resources Coordinator on December 2, 2020, via text message that she "[felt] like [Mr. Scallan was] rushing her back [to work from FMLA leave]"

40.

By informing Defendant's Human Resources Coordinator of her feeling rushed back from FMLA leave by Mr. Scallan, Plaintiff put Defendant on notice that she felt that her FMLA leave was being interfered with and that she was being harassed based on taking FMLA leave.

41.

In December of 2020, Mr. Scallan terminated another of Defendant's employees, Kammal King ("Mr. King"), shortly after Mr. King returned from leave under the FMLA.

42.

Mr. King is a member of one or more protected classes based on his race and color.

43.

Mr. King was discriminated against by Mr. Scallan, and thereby Defendant, when he was terminated by Mr. Scallan for taking leave under the FMLA.

44.

In September of 2020, Mr. Scallan terminated another of Defendant's employees, Woonhak "Jonah" Kim ("Mr. Kim"), who is a member of one or more protected classes based on his race and color.

45.

Lakimah Miller, another of the Defendant's employees, also took maternity leave to care for her child. However, Ms. Miller was rushed back from her leave in a similar manner to the way that Mr. Scallan attempted to pressure Plaintiff into returning from leave early. Ms. Miller is a member of the protected class of individuals, based on her race, color and gender. Ms. Miller was also discriminated against by Mr. Scallan and thereby Defendant, and returned to work early while taking leave under FMLA.

46.

Mr. Scallan has a history of targeting minority individuals that take protected FMLA leave, by discriminating against them and harassing them until their eventual termination, due to their race, color and/or sex, and for taking FMLA leave, which is a protected activity.

47.

On or about January 8, 2021, while Plaintiff was on FMLA leave, Mr. Scallan called Plaintiff to inform her of Mr. King's termination.

48.

Plaintiff took being informed of Mr. King's termination upon returning from FMLA leave to heal from his medical procedure as an implied threat against her own position with Defendant due to her also being on FMLA leave to care for her newborn child.

49.

Plaintiff responded to being informed of Mr. King's termination by asking Mr. Scallan if her job was also in jeopardy, given Plaintiff is also a member of a protected class by her race and color and was on FMLA leave for the birth of her child.

50.

On or about February 2, 2021, the day after Plaintiff returned to work from her FMLA leave, Mr. Scallan held a performance review with Plaintiff where he advised Plaintiff that she was in good standing with her performance in 2020 and that, "[he does not] have to worry about [her], [she] has [her] area under control".

51.

On or about January 8, 2021, Mr. Scallan advised Ms. Richardson that she was to receive a ten (10) cent raise.

52.

On or about February 23, 2021, Mr. Scallan told Plaintiff via Microsoft Teams to "please clear your que [*sic.*] daily". Plaintiff replied, "I do.. sometimes they ask me to cancel and they don't cancel timely". Mr. Scallan then complimented Plaintiff's diligence in her work by saying, "ok thanks/ [*sic.*] appreciate you keeping an eye on these ques [*sic.*]."

53.

On or about March 22, 2021, Mr. Scallan sent Plaintiff a compliment via Microsoft Teams, on clearing her queues, stating, "your ques over all [*sic.*] are looking GOOD!! thanks [*sic*] for your hard work..."

54.

On or about May 14, 2021, Defendant terminated Plaintiff's employment.

55.

Defendant claimed that Ms. Richardson was terminated because of alleged performance issues and insubordination.

56.

Defendant's stated reason for terminating Plaintiff was a mere pretext for terminating Plaintiff due to her taking protected FMLA leave and her race, color and/or sex, and is directly contradicted by Mr. Scallan's issuance of a raise in Plaintiff's pay, the results of Plaintiff's performance review, and Mr. Scallan's additional compliments of Plaintiff's work performance.

57.

Defendant's employees made numerous harassing communications directed at Plaintiff while she was out on FMLA leave with the intent of coercing Plaintiff to return to work from FMLA leave.

58.

Defendant was aware of its employees' harassing behavior based on numerous reports made by Plaintiff complaining specifically about Mr. Scallan's threatening, harassing, and discriminatory behavior including the above-mentioned text messages, emails, and an additional email sent to Defendant's Human Resources Coordinator on or about April 9, 2021.

59.

Defendant ultimately terminated Plaintiff in retaliation for Plaintiff taking FMLA leave for the birth and subsequent care of her child, which is a protected activity.

60.

Defendant discriminated against Plaintiff based on her race and sex by harassing and ultimately terminating her employment due to her status as a Black woman, a protected class of individuals.

## V. CLAIMS FOR RELIEF

61.

Plaintiff realleges paragraphs 1 through 59 as if fully set forth herein and further alleges:

### A. VIOLATION OF FAMILY MEDICAL LEAVE ACT (FMLA)

62.

As an eligible employee, Plaintiff was entitled to a total of twelve (12) workweeks of leave during any 12-month period for the birth and care of her newborn child under the FMLA.

63.

Plaintiff complied with all conditions precedent to request leave under FMLA including, but not limited to, providing timely notice of leave, and completion of an application for leave. 29 U.S.C. §§ 2612 & 2613.

64.

Plaintiff took FMLA leave, a protected activity, from November 4, 2020, until February 1, 2021.

65.

Defendant interfered with Plaintiff's rights under FMLA as Defendant's employee unlawfully asked her to work and continuously harassed her about her return date, despite knowing Plaintiff was on FMLA leave and Plaintiff having informed Defendant of her return date when she applied for FMLA leave.

66.

Defendant's termination of Plaintiff's employment was an adverse employment action under the FMLA. 29 U.S.C. § 2615.

67.

Defendant unlawfully interfered with and denied the exercise of or the attempt to exercise Plaintiff's rights provided by FMLA. 29 U.S.C. § 2615.

68.

Defendant unlawfully discriminated and retaliated against Plaintiff for exercising her lawful right to leave under the FMLA. 29 U.S.C. § 2615 (a)(2).

69.

Plaintiff is entitled to seek damages against Defendant equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her by reason of Defendant's violation of FMLA. 29 U.S.C. § 2614.

70.

Plaintiff is entitled to the reinstatement of her employment and benefits as a Transport Dispatch Coordinator for Defendant because of Defendant's unlawful action in interfering with her leave under FMLA and for termination of her employment in retaliation for taking FMLA leave.

71.

Plaintiff is entitled to an award of interest on the amount of her wages, salary, and benefits calculated at the prevailing rate. 29 U.S.C. § 2617(a)(1)(A)(I)(ii).

72.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action. 29 U.S.C. § 2617(a)(3).

## B. VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND 1991 ("TITLE VII")

73.

Plaintiff realleges paragraphs 1 through 71 as if fully set forth herein and further alleges:

74.

As Black and a female, Plaintiff is a member of two or more protected classes under Title VII, race, color and sex.

75.

Plaintiff was subjected to an adverse employment action when Defendant targeted her as a minority woman, by continually harassing and discriminating against Plaintiff, leading to her eventual termination upon return from FMLA leave.

76.

Plaintiff was qualified to do her job as a Transport Dispatch Coordinator, which she held from April 15, 2019, until May 14, 2021.

77.

Plaintiff's qualifications for her job as Transport Dispatch Coordinator include, but are not limited to, a bachelor's degree from Central Michigan

University in Industrial Technology Management, and two years of prior work experience at United Parcel Service ("UPS") in logistics.

78.

Defendant employer displays a persistent pattern of targeted, sex and racial discrimination, and harassment toward minority employees, especially those who take FMLA leave.

79.

Defendant interfered with Plaintiff's rights under FMLA as Defendant's employee unlawfully asked her to work and continuously harassed her about her return date, despite knowing Plaintiff was on FMLA leave and Plaintiff having informed Defendant of her return date when she applied for FMLA leave.

80.

Defendant's termination of Plaintiff's employment because of her race, color and sex was an adverse employment action under Title VII. 42 U.S.C. § 2000e.

81.

Defendant unlawfully discriminated and retaliated against Plaintiff for exercising her lawful right to leave under Title VII. 42 U.S.C. § 2000e.

82.

Plaintiff is entitled to seek damages against Defendant equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her by reason of Defendant's violation of Title VII. 42 U.S.C. § 2000e-5.

83.

Plaintiff is entitled to the reinstatement of her employment and benefits as a Transport Dispatch Coordinator for Defendant because of Defendant's unlawful action in discriminating against her due to her sex and race.

## C. INTEREST, COSTS, AND ATTORNEY'S FEES

84.

Plaintiff realleges paragraphs 1 through 82 as if fully set forth herein and further alleges:

85.

Plaintiff is entitled to an award of interest on the amount of her wages, salary, and benefits calculated at the prevailing rate. 29 U.S.C. § 2617(a)(1)(A)(I)(ii).

86.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action. 29 U.S.C. § 2617(a)(3).

## VI. <u>PRAYERS FOR RELIEF</u>

WHEREFORE, Plaintiff Danielle Richardson respectfully prays that this Court:

a) Find that Defendant unlawfully and illegally interfered with Plaintiff's FMLA leave in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601, <u>et seq</u>.;

b) Find that Defendant unlawfully and illegally terminated Plaintiff from her employment in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601, <u>et seq</u>.;

c) Find that Defendant unlawfully and illegally discriminated against and harassed Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and 1991;

d) Award Plaintiff back pay and benefits;

e) Award Plaintiff compensatory damages;

f) Award Plaintiff reinstatement of employment including restoration of all her employment benefits;

g) Award Plaintiff interest on the amount of her wages, salary and benefits calculated at the prevailing rate;

h) Award Plaintiff reasonable attorney's fees and costs of this action;

i) Grant Plaintiff a trial by jury on this matter; and

j) Award Plaintiff such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 16th day of August, 2022.

SMITH, WELCH, WEBB & WHITE, LLC

Megan Murren Rittle
Georgia Bar No. 384595

SMITH, WELCH, WEBB & WHITE, LLC
P.O. Box 10
2200 Keys Ferry Court
McDonough, Georgia 30253
TELEPHONE: (770) 957-3937
mmrittle@smithwelchlaw.com

STATE OF GEORGIA

COUNTY OF HENRY

## **VERIFICATION**

Personally appeared before me the undersigned officer duly authorized by law to administer oaths, DANIELLE RICHARDSON, who states upon oath that the facts set forth in the within and foregoing COMPLAINT are true and correct to the best of her knowledge and belief.

This ___16___ day of ___August___, 2022.

_____
DANIELLE RICHARDSON

Sworn to and subscribed before me this

___16___ day of ___August___, 2022.

_____
NOTARY PUBLIC

{Doc: 03121565.DOCX}